## V. W. WELLS et al. v. STATE.

No. A-5647.  Opinion Filed March 5, 1927.
(253 Pac. 911.)

Champion, Champion & George, for plaintiffs in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiffs in error, hereinafter called the defendants, were charged jointly by information in the county court of Carter county, with Jim Russell and Clellie Shockley, with the crime of manufacturing intoxicating liquor, with the willful and unlawful intent then and there to sell, barter, give away, and otherwise furnish the same to others, contrary to the form of the statute in such cases made and provided, and the defendants Victor Wells and Claude McPhetridge were convicted, and their punishment fixed at a fine of $50 each, and 30 days in the county jail at Ardmore.  Defendants filed motion for a new trial, which was considered and overruled, and sentence pronounced on the verdicts.

To reverse the judgments rendered, the defendants have appealed to this court, and have assigned five errors alleged to have been committed by the trial court, which errors are as follows:

"(1)  Because the verdict of the jury is contrary to law.

"(2)  Because the verdict of the jury is contrary to the evidence.

"(3)  Because the verdict of the jury is contrary to the law and the evidence.

"(4)  Because of error of the court in refusing to instruct the jury to return a verdict of not guilty in favor of these defendants and each of them.

"(5)  Error of the court in giving instructions Nos. ——, which do not convey, and are not the law governing this case."

But in the brief counsel for the defendants have grouped the assignments of errors, and have considered them in one general proposition, to wit:

"That the court erred in overruling the demurrer of the plaintiffs in error to the evidence offered by the state, and that the verdicts of the jury are contrary to the evidence."

As to whether or not the errors assigned by the defendants are well taken we deem it necessary to set out a brief summary of the testimony in this case.

The state called John W. Ginn, who in substance testified as follows:

"My name is John W. Ginn. I am and was on the 1st day of December, 1924, deputy sheriff of Carter county. I know the defendants, and saw them on or about that date about four miles east of Ardmore over at a still. I came up from the east, coming west, and saw them about 50 yards before I got to them and before they saw me. I crawled to within about 15 steps of them, and then jumped in on them and hollowed at them. Vic Wells broke, and run past the still. Mr. Keirsey and Hale Dunn stopped these boys, and I chased Victor on a little way, but never caught up with him. We found 14 gallons of whisky, seven empty barrels, three barrels with a little in them, and three barrels that had not been made up, a galvanized barrel, a galvanized gasoline tank, a copper worm, and thump keg. The still was running full blast, all four of the defendants were there. Claude McPhetridge was drunk. That was in Carter county, Okla. Later Victor Wells came in."

The state also called W. C. Keirsey, who testified in substance as follows:

"My name is Con Keirsey. I am and was on the 1st day of December, 1924, a deputy sheriff in Carter county. I am acquainted with the defendants, and saw them on or about the 1st day of December, 1924. I saw Claude McPhetridge, Clellie Shockley, and Jim Russell. I could not say positively about Victor Wells. I saw them about six or eight miles east of town. We went out where the still was. They were all working around this still. It was in a deep branch; the branch

was pretty steep. We found fourteen gallons of whisky, six or seven barrels of mash. The still was in operation."

On cross-examination he testified that "Claude McPhetridge was drunk. Victor Wells ran off."

The state called Hale Dunn, who testified as follows:

"My name is Hale Dunn. I am and was on the 1st day of December, 1924, a deputy sheriff in Carter county, and on that date I saw three of the defendants, Mr. Russell, Shockley, and Mr. McPhetridge out east of town at a still. We went out there in December, and came on them at a still at work. I would not be positive, I think it was Victor Wells who stood with his hands up, while Johnie got within 15 steps of where he was when he wheeled and ran. I could not swear it was Victor, but it looked like him. Claude was drunk. We found fourteen gallons of whisky, seven barrels of mash, and a still in operation."

On cross-examination he testified as follows:

"I don't know what Victor Wells was doing there. I don't know whether Victor Wells was there or not. Claude was drunk. I supposed he was working from the looks of his clothes. Some of them were carrying whisky and some water. Claude was trying to run. I never saw him with anything in his hands. From the looks of his clothes he was working. Victor was around the still with the rest of them. I saw him drop something. I don't know what it was."

The defendants called the following witnesses, who testified as follows:

"My name is Jim Russell. I am 20 years old. I was arrested by Hale Dunn, Con Keirsey, and John Ginn for having a still. Clellie Shockley, Claude McPhetridge, myself, and my little brother was there when we were arrested. Victor Wells was not there. That was my still; none of the other defendants had any interest in it. Claude McPhetridge had been at the

still about 30 minutes. He got drunk. He did not have any interest in the still. He was not helping me run it. Victor Wells was not there. Claude had been there long enough to get drunk—about 30 minutes. He wasn't working around the still."

On cross-examination he testified further:

"I live about a half a mile from where the still was. Victor Wells is my brother-in-law. He was not present at that time. I am not trying to take this on myself so as to let the other boys go. If they had anything to do with it I would say so. I had been running the still since something like sunup, and was running it by myself until these boys came. McPhetridge was hunting his mules. I was talking to Shockley when the officers came up. McPhetridge was drunk. The first time I saw Wells he was running up the Creek. My little brother brought the Shockley boy down there."

Earl Wells was called for the defendants, and stated that he was the father of V. W. Wells, and that his son had a good reputation.

The above in substance is all the testimony offered by both parties. At the close of the testimony, V. W. Wells and C. C. McPhetridge interposed a demurrer to the evidence, which demurrer was by the court considered and overruled. To the ruling of the court the defendants duly excepted.

The only question in this case to be determined is the sufficiency of the evidence to sustain the verdicts. The only evidence against McPhetridge is that he was near the still, drunk, and unable to run when the officers came up to the still. Jim Russell, one of the defendants who testified for the defendants, stated that the still and properties connected with it belonged to him, and that neither McPhetridge nor V. W. Wells owned any part of it, or had anything to do with the making of the whisky, and that they did not furnish

any of the material used in making the whisky; that V. W. Wells was not at the still when the officers came.

In the case of White v. State, 28 Okla. Cr. 358, 230 P. 943, this court held facts very similar to the facts in the case at bar insufficient to sustain a verdict of conviction. In the White Case Charley Fourkiller testified:

"William Johnson, Roach Young, and Jack Wolf, and I were on the bluff and these men were under the bluff. There was a fire there, and they had a kettle or boiler on this fire when we got down to this place. Tom White was something like 20 steps from the fire down drunk. All of us sampled this stuff, and it was choctaw beer."

Grant Feather, called as a witness in the White Case, testified, in answer to question, "Who made it?" "Me and Sunday White and Matt White, just us three made it."

In passing on this case, the court said:

"There is no direct evidence to connect this defendant with the making of the liquor in question, and when a conviction is sought on circumstantial evidence alone, the circumstances proved must not only be consistent with each other and with the hypothesis of the defendant's guilt, but inconsistent with any rational hypothesis other than his guilt. A conviction may not be founded upon mere conjecture or upon probabilities, however strong."

In the case of Williamson v. State, 20 Ala. App. 394, 102 S. 485, that court, passing upon a similar question, uses this language:

"Where evidence was conflicting as to whether defendant was engaged in operation of a still, his presence there without evidence tending to connect him with its operation, control, or ownership, was insufficient on which to predicate verdict of guilty."

236

· In Moultrie v. State, 20 Ala. App. 258, 101 So. 335, in passing upon that case, the court says:

"Evidence that accused was discovered lying down close by a still was not sufficient to support a conviction for manufacturing liquors or having possession of a still." State v. Pope et al. (Mo. App.) 269 S. W. 411.

In this case there is no direct evidence connecting, or attempting to connect, either of these defendants with the ownership or operation of the still. The testimony is conflicting as to whether the defendant V. W. Wells was present at the place where the still was located when the officers came. In fact, the testimony of the identification of Wells is uncertain and indefinite.

In our opinion, the court erred in denying these defendants' motion for a directed verdict of acquittal. Because the evidence is insufficient to sustain the verdicts, the judgment is reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.